SUTER, Administrator, Respondent, vs. THE PARK & NEL-
SON LUMBER COMPANY, Appellant.

*March 9 — April 3, 1895.*

*Master and servant: Defective appliances: Death of employee: Assumption of risk: Contributory negligence: Evidence: Instructions.*

1. In an action for the death of plaintiff's intestate, alleged to have been caused by the negligent and defective construction of the track in defendant's mill yard along which the deceased was assisting in moving a car loaded with lumber, by reason of which the car left the track and the lumber fell upon him, the evidence (stated in the opinion) is *held* sufficient to sustain a verdict for the plaintiff.

2. In such case a charge to the jury which made the questions of assumption of risk and contributory negligence turn upon whether the deceased *knew and fully comprehended* the danger, instead of whether, in the exercise of ordinary care, he ought to have observed and comprehended such danger, was erroneous.

3. An instruction which left the jury to infer that the plaintiff was entitled to recover unless they found that the deceased "recklessly exposed himself to peril of the existence of which he knew, and failed to exercise the care for his personal safety that might reasonably be expected of him, and such conduct on his part contributed to the injury," was misleading.

APPEAL from a judgment of the circuit court for Pierce county: E. B. BUNDY, Circuit Judge. *Reversed.*

This is an action to recover damages for the death of Samuel Suter, alleged to have been negligently killed by the defendant while at work in its service in the line of his employment, aiding in propelling a car loaded with lumber, November 22, 1890. The answer consists of admissions and denials.

At the close of the trial the jury returned a special verdict to the effect (1) that the injury was occasioned by defects in the track at the place where the car went off; (2) that such defects were not obvious to a man of mature years and or-

dinary intelligence, situate as was the plaintiff's intestate; (3) that the plaintiff's intestate did not throw the car from the track by the use of a bar, while standing in front thereof; (4) that the track was wide enough where the car went off to allow the wheels to drop between the rails; (5) that the plaintiff's intestate did not voluntarily undertake to assist in the moving of the car; (6) that the plaintiff's intestate, while in the employ of the defendant, did not know, nor by the exercise of reasonable caution might he have known, nor had he reasonable opportunity to know, of the defects in the track on which the car was; (7) that the car was thrown off the right side of the track, to a person facing the dry-house; (8) that the track was not reasonably safe, at the point where the accident occurred, for the use for which it was designed; (9) that Park, having authority to do so, directed the plaintiff's intestate to enter upon the work of moving the car; (10) and in doing so directed him to do what would necessitate his going in front of the car; (11) and that such work was at the time being performed under the personal direction and supervision of the manager and principal officer of the defendant. And the jury also found for the plaintiff and assessed his damages at $5,000.

Judgment was thereupon ordered and directed in favor of the plaintiff and against the defendant for $5,000 damages and costs to be taxed. From the judgment entered accordingly the defendant appeals.

For the appellant there were briefs by *J. W. Hancock, Clapp & Macartney,* and *Frank M. Wilson,* and oral argument by *N. H. Clapp.*

For the respondent there was a brief by *T. F. Frawley,* attorney, and *W. H. Stafford,* of counsel, and oral argument by *Mr. Frawley.*

CASSODAY, J.   1. There is evidence tending to prove that on the day of the accident the defendant was the owner and

engaged in operating a sawmill, box factory, and dry-house, together with certain railroad tracks and cars used thereon and in connection therewith, at Salem, Pierce county; that leaving the dry-house, on the west side thereof, a single track extends a distance of six feet, where it branches and curves abruptly, one to the northwest and the other to the southwest; that there was no grading done preparatory to putting down the ties; that the ties consisted of pieces of timber and basswood hearts, of irregular sizes and shapes, placed at unequal distances on uneven ground, blocked up by pieces of slabs and other material; that, except at the door of the dry-house, there was no surfacing or filling between the ties, and nothing was done to make the road firm; that the curves were formed by fastening the iron rails at one end, and by means of crowbars, ropes, and other crude means, such rails were bent on the ties, making irregular, sharp, and abrupt crooks, instead of uniform and regular curves; that the rails were T-shaped, about three inches high, and placed about six feet apart, and, except a few spikes used in making the curves, were fastened by means of wire nails; that the rails were not a uniform distance apart, and, because of the crude manner in which the road was built and the curves constructed, there were sharp bends or angles therein, making such road at places too wide, and at others too narrow, for the cars; that the cars were platforms, supported by four wheels about sixteen inches in diameter rigidly fixed to the frame, with the flanges only half an inch, and the hind and fore wheels of the car were about eight to ten feet apart; that no car had been pushed over the track before the one in question; that situate on track No. 1, at a short distance north of the curve, was stationed a car loaded with 3,000 feet of lumber, twelve to fifteen feet long, placed crosswise thereon, with inch strips between successive courses; that after the car was loaded an attempt was made to push it on this track into the dry-house, and

plaintiff's intestate, being at the time a common laborer, assisted in such work, as directed by Mr. Park, the president and general manager of the company and the person having personal charge of the operations of the men and the conduct of the work; that Park, seeing the car was stalled, directed Mr. Taake to bring the pinch bar; that Taake brought the bar, and loosened the car with it, and thereafter went away; that thereupon the plaintiff's intestate, with the pinch bar, was at the front end of the car, using such bar as directed by Park and as he told him; that while the plaintiff's intestate was holding the car and letting it come by means of the bar, and as directed by Park, the wheels of the car went off the track, and the lumber was precipitated onto and killed the plaintiff's intestate instantly.

We cannot say that there is not sufficient evidence in the record to support the verdict. This being so, the refusal to grant a nonsuit, and the refusal to direct a verdict in favor of the defendant, were not errors.

2. The court, among other things, charged the jury to the effect that if the defendant furnished unsafe and dangerous appliances, so that the deceased was obliged, in order to carry on the business in which he was engaged, to subject himself to unnecessary and unusual dangers, and the injury resulted from such negligence of the defendant and as the proximate result of the same, if the plaintiff has shown that his intestate lost his life by means of a cause or danger not usual or reasonably attendant upon his employment, he is then entitled to recover, *unless it be shown that he* (that is, Samuel Suter) *knew* of such unusual or unreasonable danger, *and fully comprehended the danger*, at the time of his employment or before the accident happened. The objection to this part of the charge is that it makes the question of the assumption of risk and the question of the intestate's contributory negligence turn upon whether the deceased "knew" of such danger, and, if he knew, whether he "fully

Suter vs. The Park & Nelson Lumber Co.

·comprehended" the same, instead of turning upon whether, in the exercise of ordinary care, he ought to have observed and comprehended the danger likely to result under the circumstances. *Luebke v. Berlin M. Works*, 88 Wis. 442. In other words, it made the knowledge and comprehension of the deceased the measure of his standard of care. To give sanction to such an instruction is to do away entirely with the fixed standard of ordinary care, and to make the standard of care, in all cases, depend upon the knowledge and comprehension of the person injured. It would, in effect, be holding that no one can assume any risk unless he not only knew of the danger in advance but fully comprehended the same. Such a ruling would abolish the doctrine of contributory *negligence* by holding, in effect, that no one should be barred from recovery by reason of mere negligence or want of comprehension, but only in case he knew in advance of the danger, and fully comprehended the same, and then knowingly exposed himself to such danger. In another part of the charge the jury were told, in effect, that if they found that the defendant had failed in its duty in regard to the safety of the track and other appliances, then it was an important question for them to determine whether the deceased "*knew* of such unusual and unreasonable danger, *and fully comprehended* its nature, at the time of the accident." This gave especial emphasis to the erroneous instruction previously given.

Another portion of the charge left the jury to infer that the plaintiff was entitled to recover unless they found that the deceased "recklessly exposed himself to peril of the existence of which he knew, and failed to exercise the care for his personal safety that might reasonably be expected of him, and such conduct on his part contributed to the injury." This was, to say the least, misleading.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.